RIEDEL v. WEST JERSEY & S. R. CO.

(Circuit Court, E. D. Pennsylvania. June 2, 1909.)

No. 364.

ELECTRICITY (§ 15*)—ELECTRIC RAILROAD USING THIRD RAIL—CARE REQUIRED AS TO TRESPASSING CHILDREN.

Defendant operated an electric railroad by the third-rail system, such rail being covered at stations and crossings, and the remainder of its line being inclosed by a fence as required by statute. At a point in a village where the right of way was inclosed by a picket fence, in which there was a gate fastened by a bolt, plaintiff, a boy eight years old, was playing with another boy of about the same age when they were attracted by some flowers on the right of way beyond the track. They succeeded in opening the gate, and were crossing the track when plaintiff fell upon the third rail and was severely injured. *Held* that, in the absence of any statutory requirement, defendant was under no duty to keep the third rail at such point covered for the protection of trespassers, whether adults or children, nor was it chargeable with negligence by reason of the gate which rendered it liable for the injury, there being nothing about its track which it could reasonably anticipate would attract children.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 15.*]

On Motion by Plaintiff for a New Trial.

Evans & Forster, for plaintiff.
John Hampton Barnes, for defendant.

J. B. McPHERSON, District Judge. The defendant operates a line of electric railway eastward from Camden to Atlantic City in the state of New Jersey, using the third-rail system. Except at stations and crossings, the rail is unprotected, but, so far as appears, the right of way is fenced in accordance with the requirements of the New Jersey statutes. At all events, it was so fenced at the point where the injury happened for which this suit is brought. The other facts relating to the accident are few and undisputed: On July 4, 1908, the plaintiff, who was then a lad nearly eight years old, went with his parents to visit friends of the family residing in the village of Westville. The house, which was about two blocks east of the station, fronted on the street, and the lot extended back to the defendant's right of way. Between the lot and the tracks was a pointed picket fence five feet high in which there was a gate. The fence and the gate had been in place nearly six years at least, and during that time, so far as the testimony discloses, no one had used the gate. It was fastened with a slip bolt, and was further secured with "a piece of wood, sometimes a nail, whatever I found handy"—to use the language of the owner of the property. During the morning the plaintiff was engaged in play with another boy nearly nine years old, and after various excursions they found themselves in the back part of the lot. Looking through the fence, they saw and were attracted by some flowers growing on the other side of the rails, and went to the gate to open it. Finding it fastened, the plaintiff's companion, as he testified, "put a nail or a piece of wood, then pulled it out again,

and it came open." Having thus unbolted the gate, the two started to pluck the flowers. The first boy crossed the tracks in safety, but the plaintiff fell, apparently having tripped over something, and came in contact with the third rail, sustaining severe and permanent injuries. Upon these facts the court directed a verdict for the defendant, and the question now is whether this instruction was correct.

I have had the advantage of an elaborate and very capable argument in support of the plaintiff's contention that the case should have been submitted to the jury, but I have not been convinced that the action of the court was wrong. It would extend this opinion unduly to follow the argument in detail, but I may indicate briefly the reasons that have controlled my judgment. In the first place, the class of decisions to which the "spring-gun" cases belong may, I think, be laid aside as inapplicable. The plaintiff was making a lawful use of its right of way. It was employing an instrumentality which it was permitted to use, in a manner which it was at liberty to adopt, and upon a roadbed which was fenced and set apart as required by law. No statute compelled it to cover the third rail, although such protection was properly—and, it is not too much to say, was necessarily—given to the public at crossings and stations, where passengers and other persons had a concurrent right. It is so clear, however, that the "spring-gun" cases are not in point, that I content myself with referring to a note appended to State v. Barr, 29 L. R. A. 151, in which the whole subject was discussed a few years ago. Neither, as it seems to me, are the so-called "turntable" cases applicable. The essential feature of this class is the attractiveness of the turntable, or other device, whatever it may be, especially its attractiveness to children; and, where these decisions are accepted as authoritative— they are denied in a good many jurisdictions—it has been held that the owner of the device must recognize such attractiveness and take reasonable precautions accordingly. As is said in 29 Amer. & Eng. Ency. of Law (2d Ed.) 33:

"This liability is based on the theory that there is an implied invitation to such children to visit the turntable, it being a dangerous place, which the railroad knows or reasonably ought to know is attractive as a plaything to children, whose judgment is too immature to enable them to realize its dangerous character, and that therefore it is the duty of the railroad so to safeguard it that such children cannot be injured thereby."

See, also, two recent cases Conrad v. Baltimore & O. R. Co., reported in (W. Va.) 61 S. E. 44, 16 L. R. A. (N. S.) 1129, and Wheeling & L. E. R. Co. v. Harvey, 77 Ohio, 235, 83 N. E. 66, 122 Am. St. Rep. 503, especially the case of Wheeling & Lake Erie Railroad Co. v. Harvey, a decision by the Supreme Court of Ohio, in which the whole subject of a property owner's liability to a trespasser, whether he be an adult or a minor, is learnedly and satisfactorily treated. Reference may also be made to the note to Ft. Worth Railroad Co. v. Robertson, 14 L. R. A. 781. Here, however, the device that did the injury was not inherently attractive, and, besides, there is affirmative proof that what allured the lads upon the track was not the rail itself, but the flowers that grew beyond it. Neither, I think, do the cases apply in which a gate has

170 F.—52

sometimes been called an invitation to use a particular route or path. No path led from it, and, even if a path had been there, the fact would be immaterial unless there had been some connection between the path and the flowers. The gate had not been used for five years; it was fastened with reasonable caution; and under such circumstances the only ground on which the railroad company could be held to be negligent in reference to the gate would be on the ground that it was obliged either to take out the gate altogether or to nail it shut, anticipating that a child might succeed in opening the bolt and might then stray upon the tracks.

This brings me to what is, after all, the central position of the plaintiff's counsel, namely, that the company was bound to cover its third rail so as to protect it against possible trespassers, the reason assigned being that the instrumentality is so extremely dangerous that extraordinary precautions must be adopted to preserve even trespassers from harm. I am unable to agree to this proposition as a sound legal rule. The conceded dangers of the third rail may undoubtedly induce a Legislature to require extraordinary precautions to be taken against injury therefrom, and it is no doubt true that, where the public are or are likely to be exposed to its perils, the companies that use it are obliged, even in the absence of legislation, to exercise care commensurate with the danger; but in this case we are dealing with the duty toward a trespasser, and, before the defendant can be held liable, some breach of a legal obligation toward him must be shown. There can be no actionable wrong unless the defendant has been negligent, and negligence must be found in a breach of duty, or it does not exist.

Now, what duty did the defendant owe to this child? Primarily it owed the duty to exclude him from the right of way; or—what is perhaps a more accurate statement—it was bound to maintain the statutory fence, which the Legislature had declared to be sufficient. This was done, but it may be assumed that, if the circumstances had been unusual, presenting a peculiar hazard, the defendant would be under a corresponding duty, which might not be discharged by the mere maintaining of the lawful fence. In what respect, therefore, if at all, was the situation peculiar? The plaintiff's answer is that the situation was peculiar because of the presence of the uncovered third rail; but to this the sufficient reply is, as it seems to me, that the rail was harmless to all persons who remained outside of the right of way. It was only dangerous to a trespasser, and certainly it cannot be contended that, if an adult had trespassed where the plaintiff was injured, the defendant would have been liable. But the plaintiff urges that the situation was also peculiar, because a child was involved, and because care must be exercised toward children in proportion to their childish capacity. What duty, then, was violated which the defendant owed to the injured child? There was no violation of duty in maintaining an attractive danger on the defendant's premises; for no implied invitation from such a source is even alleged, and none has been proved. Moreover, there was no invitation from an open road, for a lawful fence was there, as well as a closed and bolted gate, so that a certain degree at least of obstruc-

tion was undoubtedly present. It seems, therefore, to be clear, that the duty of the defendant must be found, if anywhere, in an obligation to anticipate that a child might, in the pursuit of some object, not at all connected with the unguarded rail, be attracted to the right of way and might be successful in unbolting the gate, and that in view of such a possibility the defendant would be bound to take still further precaution, either by padlocking the gate or by nailing it shut. It is obvious, however, I think, that children might circumvent even these precautions. If in no other way, they might climb the fence, and they would then be as much exposed to danger as if the gate had been neither locked nor nailed. Evidently, this possibility must also be foreseen, and the result is that the rail itself must be protected. But no covering can be fully adequate; there will always be some danger, although it may be slight, and the danger will be greater where children are concerned than in the case of adults. Is the standard of safety to be measured by the peril of the child or of the adult? It seems to me that it would be unreasonable to hold the defendant to account for failing to anticipate the remote happenings that must be supposed as possible by the plaintiff's theory, and that the only safe rule to follow is the general rule that a trespasser, whether an adult or a child, cannot recover for injuries suffered upon the premises of another person, unless in such a situation or under such circumstances as the law has explicitly declared to be exceptional. In my opinion, no such exception was present in the case now under consideration, and, as I should not have felt justified in supporting a verdict in favor of the plaintiff, it was my duty, as I conceive it, to direct a verdict in favor of the defendant.

The motion for a new trial is overruled.